# O'Neil *v.* The State.

*Petition for Habeas Corpus.*

1.  *Habeas corpus; convict not discharged because retained in quarantine.*—While a party who has been convicted and sentenced to suffer imprisonment in the penitentiary must not thereafter be detained by the sheriff for an unreasonable length of time, if at the time of receiving the sentence the convict has been exposed to smallpox or other contagious disease, which prevailed in the jail where he was confined up to the time of his conviction, the detention of such convict by the sheriff at a place of quarantine for the time necessary for him to become immune from the exposure to the disease, is not a detention for an unreasonable length of time, and does not entitle such convict to his discharge.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

On May 8, 1902, the appellant, John O'Neil, through his attorney, filed the petition in the present suit, addressed to Hon. A. D. Sayre, judge of the city court of Montgomery, in which he averred that he was imprisoned and restrained of his liberty by W. R. Waller, the sheriff of Montgomery county, on the farm of said Waller, which was about 4 miles from the city of Montgomery; that said petitioner had been tried and convicted in the said city court of Montgomery on an indictment charging him with grand larceny; that after being convicted, he was sentenced to the penitentiary for a term of three years; that he had, on April 23, 1902,

[O'Neil v. The State.]

filed a petition asking for a writ of *habeas corpus*, and that he be discharged from such unlawful custody, and that on the hearing of said petition, there was an order issued remanding him to the custody of the inspectors of convicts, to be by them held under the sentence of the city court of Montgomery, but that said order was not complied with and said petitioner was detained by the said Waller as sheriff of Montgomery county in his custody and returned to the farm of said Waller and was there made to work. Thereupon the petitioner averred that his imprisonment was unlawful for the following reasons: "First. Though the original imprisonment was unlawful said John O'Neil has become entitled to his discharge by reason of subsequent act, omission or event. Second. The person who has the custody of said O'Neil is not the person authorized by law to detain said John O'Neil. Third. Your petitioner further avers that said John O'Neil is being worked together with felons and misdemeanants, is confined to the same compartments with white and black convicts, and with male and female convicts contrary to the statutes of Alabama Code, § 4493. Fourth. Said John O'Neil is confined by one Wm. R. Waller as sheriff of Montgomery county who is interested in the profit of his labor contrary to laws of the State of Alabama. Fifth. Said John O'Neil is confined by W. R. Waller, sheriff of Montgomery county, contrary to the Code of Alabama, § 5117. Sixth. Said John O'Neil was convicted on the 26th day of March, 1902, and has not yet been taken to the penitentiary of the State of Alabama, thereby causing an unreasonable and unwarranted delay. Seventh. Your petitioner further avers that the said John O'Neil is detained by said Waller contrary to the order of Hon. A. D. Sayre, judge of the city court, and, if there had ever been any exposure of the said John O'Neil to small pox, or any other contagious disease, that a sufficient time has elapsed since the sentence of said O'Neil to have demonstrated that the said O'Neil has not contracted any disease and that further detention for observation is unnecessary. Eighth. Your petitioner avers that the order of Hon. A. D. Sayre has been willfully and in-

[O'Neil v. The State.]

tentionally disobeyed and disregarded by the said W.
R. Waller, sheriff, and the convict inspectors of Ala-
bama in that said convict inspectors have not regarded
said order of Hon. A. D. Sayre, as judge aforesaid, but
are trifling with the order of the said judge by a willful
disregard and disobedience of said order."

The prayer of the petition was for the issuance of a
writ of *mandamus* addressed to said W. R. Waller, in-
dividually and as sheriff of Montgomery county, com-
manding him to bring the body of said John O'Neil be-
fore the judge to whom the petition was addressed.

In answer to the writ of *habeas corpus* issued, the
said W. R. Waller brought the said O'Neil before the
court and made his return or answer to said writ. The
substance of this answer is sufficiently stated in the
opinion.

Upon the hearing, the judge of the city court re-
manded the petitioner to the custody of the inspectors
of convicts to be held by them under the sentence of the
city court of Montgomery. Thereupon the petitioner
requested the judge presiding to suspend sentence pend-
ing his appeal to the Supreme Court; said petitioner
having given notice of said appeal. The judge declined
to suspend said sentence, and to this ruling the defend-
ant excepted. The petitioner appeals.

TERRY RICHARDSON, for appellant, cited Code, § 4495;
*Ex parte Goucher*, 103 Ala. 306; *Ex parte King*, 82 Ala.
60; *Ex parte McKent*, 56 Ala. 236; *Ex parte Kirby*, 62
Ala. 51; *Ex parte Metcalf*, 75 Ala. 42; *Ex parte Smith*,
76 Ala. 69; *Ex parte, Stewart*, 98 Ala. 68; *Ex parte
Crews*, 78 Ala. 457.

CHAS. G. BROWN, Attorney-General, for the State.

HARALSON, J.—It is well understood, that when a
party has been convicted and sentenced to hard labor
for the county, or to suffer imprisonment in the peni-
tentiary, a sheriff must not detain him afterwards, in
the county jail or elsewhere, for an unreasonable length
of time, and that an unreasonable detention, entitles
the prisoner to be discharged *from the custody of the*

[O'Neil v. The State.]

*sheriff*, but not absolutely as we shall see, for a "subsequent act, omission or event."—*Ex parte Goucher*, 103 Ala. 305. The sheriff should deliver the convict to the proper authorities after sentence has been passed, as soon as he can do so, consistently with the discharge of his duty.—*Ex parte King*, 82 Ala. 59. What is a reasonable or unreasonable time to detain him, depends on the circumstances of each particular case. If the convict at the time should be too sick to be removed from the jail by the inspectors of convicts, his detention there until such time as he may be able to be safely taken therefrom and carried to the place to which he is sentenced to labor, could not be said to be an unreasonable detention.

In this case, it was shown that smallpox had prevailed in the jail where the petitioner had been confined, up to and at the time of his conviction. To have removed him from the jail to the penitentiary, immediately after his conviction, and placed him at labor with other convicts in that prison, would have exposed them to liability to the disease, an act which the ordinary claims of humanity would condemn. There is no law, of which we are aware, that would sanction his transfer under such circumstances, or be violated in his detention elsewhere, in quarantine, until after the lapse of the period fixed by experience to render it safe to the other convicts for him to be taken to the penitentiary. The physician inspector testified on the trial, that in his opinion the petitioner had been exposed to smallpox; that it required twenty-one days after exposure, for him to become immune therefrom, and that the quarantine period of twenty-one days expired on the 6th of May, 1902. To what place a convict may be removed and kept in a case of this character, is not specified in the statute, nor has specific provision been made, so far as we are aware, to meet an emergency of the kind. It may have been deemed unimportant to do so, the presumption being that the inspectors of convicts might be trusted with his keeping meantime, at some suitable, safe place for his detention, until the time arrived when he could, with safety to other convicts, be

carried to the place of labor as specified in his sentence. This place may well be at a hospital or outhouse where persons exposed to small pox are quarantined, or on a farm, or other isolated place, such as the good judgment of the authorities, and a due regard to the safety and health of the convict may require. This would be no more a violation of law, than would be the removal of convicts from one prison to another, in case their health and lives required it. The duty of humane treatment of prisoners, to preserve their lives, health and comfort, so far as comports with their safe keeping and the punishment they are to receive, pervades our whole convict system, and the claims of humanity are not to be needlessly disregarded.

This convict was sentenced to three years' imprisonment in the penitentiary, on the 14th of April, 1902, after conviction on an indictment for grand larceny. The reason why he was not at once delivered to the penitentiary authorities, as set out in the answer of Waller, who was sheriff at the time, and against whom this writ was issued, was, that "on or about the 14th day of April, 1902, he made a contract with the Board of Convict Inspectors of Alabama for the hire of certain convicts, the object and purpose of which contract were, to place the said convicts in quarantine until the danger of contracting small pox, to which, as was feared, they had been subjected, should be over and passed, and while he was so holding the said O'Neil, one of them, a writ of *habeas corpus* was sued out, and he was brought before the Hon. A. D. Sayre, upon application for discharge, which petition was denied, and the said O'Neil was remanded to the custody of the Board of Convict Inspectors, who, as respondent is informed and believes, having no place of safety in which to keep the said O'Neil, without danger of spreading the disease among a large number of convicts, should he develop the disease to which he had been subjected, procured this respondent, to take charge of the said O'Neil and keep him safely until the expiration of 21 days after he left the jail, which had been for months infected with smallpox." Further answering, he stated, "that on the 5th day of May, 1902, being Monday of the present week, the pres-

ident of the Board of Convict Inspectors, directed where said O'Neil should be taken for hard labor, to-wit, to the Tennessee Coal, Iron & Railroad Company, and (he) so notified that company, on that day, having at the time good reason to believe, that O'Neil would be removed to Pratt City on the following day, May 6th, 1902, but (for) some cause, not known to respondent, demand was not made for the said O'Neil, until May 9th, 1902, which was done on that day."

The petition, which is the second one before the same judge, was filed on the 8th May, 1902, and after trial, on the 10th of the same month, the judge, as on the trial of the first writ, refused to discharge the petitioner, and, as before, made an order remanding him to the custody of the Inspectors of Convicts to be held by them under the sentence of the city court of Montgomery.

The evidence on the trial tended to support the averments of the answer of defendant, Waller, and under it, we fail to discover that petitioner has presented any good reasons for his discharge. The trial judge very properly held, that it had not been shown that he had been detained from the penitentiary for an unreasonable length of time. But even if he had been detained by the sheriff for an unreasonable length of time, within which he should have been delivered to the convict inspectors, he would not, on that account, have been entitled to be discharged absolutely, but only from the custody of the sheriff, with an order remanding him to the custody of the convict inspectors, and directing the sheriff to so immediately deliver him.—*White v. State, infra,* p. 197.

There was no error in the refusal of the judge to suspend the execution of the sentence of the city court, during the pendency of this appeal.

Affirmed.